**Exhibit A**

# DEBTOR-IN-POSSESSION LOAN AGREEMENT

This DEBTOR-IN-POSSESSION LOAN AGREEMENT (the "***Loan Agreement***"), dated as of September 18, 2019, is by and between Ponderosa-State Energy, LLC, a debtor and debtor in possession (the "***Borrower***"), and RNP, LLC (the "***DIP Lender***").

## PREAMBLE

WHEREAS, on September 18, 2019 (the "***Petition Date***"), the Borrower filed a voluntary chapter 11 petition in the U.S. Bankruptcy Court for the Southern District of New York (the "***Bankruptcy Court***") initiating a case (the "***Chapter 11 Case***") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (as amended, the "***Bankruptcy Code***");

WHEREAS, the Borrower has requested that the DIP Lender extend a post-petition draw facility to Borrower to fund capital expenditures in connection with the Borrower's oil and gas properties, pay for professional fees in the Chapter 11 Case and pay the U.S. Trustee's fees in the Chapter 11 Case; and for these purposes, the DIP Lender is willing to make certain post-petition loans to Borrower in an amount and subject to the terms and conditions set forth herein; and

WHEREAS, the Borrower desires to secure all of its obligations (the "***Obligations***") to the DIP Lender under this Loan Agreement by a grant of superpriority status pursuant to Section 364(c)(1) of the Bankruptcy Code and security interests pursuant to Sections 364(c)(2) and 364(c)(3) (in each case more fully described and subject to any applicable limitations set forth in this Loan Agreement and the Financing Orders (defined below)).

NOW, THEREFORE, in consideration of the premises and the agreements, provisions and covenants herein contained, the parties hereto agree as follows:

Section 1.    DIP Loans.

Section 1.1    Interim DIP Term Loan.  On the terms and subject to the conditions set forth herein, DIP Lender hereby agrees to make to Borrower, on the first business day after the entry of an order by the Bankruptcy Court authorizing the same (the "***Interim Financing Order***"), a loan (the "***Interim Loan***") in an original principal amount up to ONE HUNDRED THOUSAND DOLLARS ($100,000.00) (the "***Interim Loan Amount***").

Section 1.2    Final DIP Term Loan.  On the terms and subject to the conditions set forth herein, DIP Lender hereby agrees to make to the Borrower, on the first business day after the entry of an order by the Bankruptcy Court authorizing the same (the "***Final Financing Order***" and together with the Interim Financing Order, the "***Financing Orders***"), a loan (the "***Final Loan***" and together with the Interim Loan, the "***DIP Loan***") in an additional amount up to TWO HUNDRED THOUSAND DOLLARS ($200,000.00), which amount may be further increased at the Borrower's request in the DIP Lender's sole discretion, by an additional TWO HUNDRED THOUSAND DOLLARS ($200,000.00) for a total maximum amount borrowed FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) (the "***Final Loan Amount***").

Section 1.3    Advances.  The DIP Lender shall make advances (each an "**Advance**") to the Borrower up to the Interim Loan Amount following entry of the Interim Financing Order, and up to the Final Loan Amount following entry of the Final Financing Order.  The DIP Lender shall make advances to the Debtor within three business days from the date the Debtor provides written notice to the DIP Lender of the amount requested for the Advance.

Section 1.4    Use of Proceeds. The proceeds of any DIP Loans shall be applied by Borrower in accordance with the terms of the Interim Financing Order, the Final Financing Order, and in accordance with the terms described herein to fund capital expenditures, to fund any of the Borrower's professional fees in the Chapter 11 Case and to fund the U.S. Trustee's fees in the Chapter 11 Case, in all cases consistent with the total expenses set forth in the budget attached hereto (the "**Budget**").  The total expenses incurred by the Borrower during any weekly period may vary by up to ten percent (10%) from the Budget and any unused amounts for any weekly period may roll forward and be available for future periods.

Section 1.5    Maturity. On September 18, 2020 (the "**Maturity Date**"), Borrower shall pay DIP Lender all principal, accrued interest and any other outstanding obligations owed to DIP Lender under this Loan Agreement.

Section 1.6    Interest. The unpaid principal amount of each DIP Loan shall bear interest at a rate of twelve percent (12%) per annum.  Interest shall accrue from and including the date of an Advance, but excluding the date of any prepayment or repayment thereof.  Interest shall compound on a monthly basis.  All accrued interest shall be payable on demand after maturity or following an Event of Default (defined below).

Section 1.7    Prepayment.  Borrower may prepay all or any portion of the DIP Loan prior to any scheduled payment, together with interest accrued thereon to the date of such prepayment, without penalty or premium.

Section 1.8    Fees and Expenses. Borrower shall pay upon demand all out-of-pocket expenses incurred by DIP Lender in connection with the preparation of loan documents, the making of the DIP Loan and the enforcement and administration of the DIP Loan, including without limitation the fees, costs, and expenses of DIP Lender's legal counsel, all subject to the Budget.

Section 2.    Security Interest and Bankruptcy Matters.

Section 2.1    Grant of Security Interest.  Subject to the terms and conditions hereof and the Carve-Out, as collateral security for the Obligations, the Borrower hereby mortgages, pledges and assigns to the DIP Lender a continuing lien upon, and a continuing security interest in, all of the currently owned or hereafter acquired property and assets of the Borrower, of any kind or nature, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising and all proceeds, products, rents and profits thereof, including, without limitation, all cash, goods, accounts receivable, inventory, cash-in-advance deposits, general intangibles, deposit accounts, real estate, mineral rights, machinery, equipment, vehicles, trademarks, trade names, licenses, causes of action (except for causes of action under chapter 5

of the Bankruptcy Code, and any proceeds thereof), rights to payment including tax refund claims, insurance proceeds and tort claims and the proceeds, products, rents and profits of all of the foregoing.

Section 2.2    Bankruptcy Matters.

(a) The Interim Loan is subject to entry of an order by the Bankruptcy Court that provides all of DIP Lender's claims for payment with respect to the Obligations, all subject to the Carve-Out, (i) shall have superpriority status pursuant to Section 364(c)(1) of the Bankruptcy Code, (ii) shall be secured by a first lien in all the Borrower's assets, including all real and personal property, whether now owned or hereafter acquired, that is not otherwise secured by a lien pursuant to Section 364(c)(2) of the Bankruptcy Code, and (iii) shall be secured by a junior lien in all the Borrower's assets, including all real and personal property, whether now owned or hereafter acquired, that is secured by a valid, perfected, non-avoidable lien, as of the Debtor's Petition Date, pursuant to Section 364(c)(3) of the Bankruptcy Code.

(b) The DIP Loan is subject to entry of an order by the Bankruptcy Court that satisfies the requirements of Section 2.2(a) and provides that the DIP Loan contemplated by this Loan Agreement are made by DIP Lender in "good faith" within the meaning of Section 364(e) of the Bankruptcy Code.

Section 3.    Default, Remedies and Carve-Out.

Section 3.1    Events of Default. Each of the following (an "***Event of Default***") shall constitute an Event of Default under this Loan Agreement: (i) failure of the Borrower to make any payment when due hereunder; (ii) the Chapter 11 Case converts to a case under chapter 7 of the Bankruptcy Code; (iii) appointment of a chapter 11 trustee in the Chapter 11 Case; (iv) if the DIP Loan is not repaid within sixty (60) days following the confirmation of a chapter 11 plan in the Chapter 11 Case; (v) the principal asset of the Borrower is sold, and (vi) the Borrower authority to use cash collateral in accordance with the Budget terminates.  The DIP Lender shall send the Borrower a written notice specifying the Event of Default (the "***Default Notice***").

Section 3.2    Remedies.  Upon an Event of Default and subject to the Carve-Out, the DIP Lender may declare all amounts under this Loan Agreement immediately due and owing and may exercise all available remedies in law and in equity.

Section 3.3    Carve-Out.  "***Carve-Out***" shall mean an amount equal to the sum of (i) fees and expenses incurred by bankruptcy professionals whose retention has been (A) approved by the Bankruptcy Court which are unpaid as of the delivery of a written notice of default and (B) provided for the in the Budget; (ii) fees and expenses in an amount not to exceed $65,000 incurred from and after the delivery of the Default Notice by bankruptcy professionals whose retention has been approved by the Bankruptcy Court plus $10,000 for chapter 7 costs if the case is converted to a chapter 7; and (iii) fees pursuant to 28 U.S.C.§ 1930 or to the clerk of the Bankruptcy Court, together with interest, if any, pursuant to 31 U.S.C. § 3717.

Section 4. <u>Miscellaneous Terms</u>.

<u>Interpretation</u>.  Section headings or captions are for convenience only and are not to be used in interpreting the provisions of this Loan Agreement.  The term "business day" as used herein means any day except any Saturday, any Sunday, any day which is a federal legal holiday in the United States, or any day on which banking institutions in the city of New York are authorized or required to close.

<u>No Modification; Entire Agreement</u>. This Loan Agreement may not be amended, modified or supplemented except by an agreement in writing signed by the Borrower and the DIP Lender and with the approval of the Bankruptcy Court.

<u>Parties in Interest; Third Party Beneficiaries</u>. This Loan Agreement is for the sole benefit of and shall be binding upon the DIP Lender and the Borrower. Nothing in this Loan Agreement, express or implied, is intended to or shall confer upon any person other than the Borrower and the DIP Lender any legal or equitable right, benefit or remedy of any nature whatsoever, under or by reason of this Loan Agreement.

<u>Governing Law; Submission to Jurisdiction; Venue</u>. This Loan Agreement shall be governed by and construed in accordance with the internal laws of the State of New York without giving effect to any choice or conflict of law provision or rule.  The parties agree that the Bankruptcy Court has authority to interpret and enforce the terms of this Loan Agreement. The parties irrevocably and unconditionally waive any objection to the laying of venue of any suit, action or proceeding in such court and irrevocably waive and agree not to plead or claim such court that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum.

<u>Waiver of Jury Trial</u>. Each party irrevocably and unconditionally waives any right it may have to a trial by jury in respect of any legal action arising out of or relating to this Loan Agreement or the transactions contemplated hereby.

<u>No Assignment</u>. The commitment to fund evidenced by this Loan Agreement shall not be assignable by DIP Lender without the Borrower's prior written consent.

<u>Counterparts</u>. This Loan Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Loan Agreement delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Loan Agreement.

<u>Severability</u>.  The illegality or unenforceability of any provision of this Loan Agreement shall not in any way affect or impair the legality or enforceability of the remaining provisions of this Loan Agreement.

[Signature Page Follows]

IN WITNESS WHEREOF, the Borrower and the DIP Lender have caused this Loan Agreement to be executed by their duly authorized representatives as of the date first above written.

BORROWER

Ponderosa-State Energy, LLC

By: _____
Richard F. Sands
Manager


DIP LENDER

RNP, LLC

By: _____
Richard F. Sands
Manager