**LAW OFFICE OF KENT RIES**
Kent Ries
2700 S. Western St., Suite 300
Amarillo, Texas 79109
Telephone: (806) 242-7437
Fax: (806) 242-7440

-and-

**KLESTADT WINTERS JURELLER**
  **SOUTHARD & STEVENS, LLP**
Fred Stevens
Christopher Reilly
200 West 41st Street, 17th Floor
New York, NY 10036-7023
Telephone: (212) 972-3000
Facsimile: (212) 972-2245

*Attorneys for the Court-Appointed Master*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re                                                             :
                                                                  :   Chapter 11
PONDEROSA-STATE ENERGY, LLC,                                      :
                                                                  :   Case No. 19-13011 (JLG)
                         Debtor.                                  :
------------------------------------------------------------------x

**OBJECTION OF KENT RIES, IN HIS CAPACITY AS COURT-APPOINTED
MASTER, TO MOTION PURSUANT TO 11 U.S.C. §§ 105 AND 543 FOR ENTRY
OF AN ORDER (I) REQUIRING SPECIAL MASTER TO TURNOVER
PROPERTY, AND (II) ESTABLISHING DEADLINES FOR SPECIAL MASTER'S
(A) ACCOUNTING AND (B) REQUEST FOR COMPENSATION**

**TO THE HONORABLE JAMES L. GARRITY, JR.,**
**UNITED STATES BANKRUPTCY JUDGE:**

      Kent Ries, the Court appointed Master (the "Master"), in the matter of *Signal Drilling, et

al v. New-Tex Operating, LLC, et al.*, Cause No. 41971 in the 84th District Court of Hutchinson

County, Texas (the "State Court Litigation"), by and through his counsel, Law Office of Kent

Ries and Klestadt Winters Jureller Southard & Stevens, LLP, as and for his Objection to the Debtor's Motion Pursuant to 11 U.S.C. §§ 105 and 543 for Entry Of An Order (1) Requiring Special Master To Turnover Property, and (II) Establishing Deadlines For Special Master's (A) Accounting and (B) Request For Compensation [Docket No. 6] (the "Motion"), and in support thereof would respectfully show unto the Court as follows:

## PRELIMINARY STATEMENT

1. The State Court Litigation involves a dispute between multiple parties over the validity of an oil and gas lease (the "Amended State Lease"). The State Court Litigation was automatically stayed by the appeal of the State of Texas, one of the parties to the Amended State Lease, to the Texas Court of Appeals. Pending that appeal, three interlocutory Orders (the "State Court Orders") have been entered that required two bank accounts to be opened and operated under the State Court's supervision, essentially through the Master as the Court's agent. These two accounts (the "Master Accounts") are the subject of the Debtor's Turnover Motion.

2. The State Court Litigation is not a simple debtor/creditor matter – it involves disputes over the ownership of the underlying property and proceeds thereof. The State Court has determined that the ownership of the oil and gas production that is the subject of the Amended State Lease is very much disputed. The production proceeds are the entirety of the Master's Accounts. Therefore, the funds in the Master Accounts have in no way been determined to be the property of the Debtor's estate. In fact, pursuant to the State Court Orders, ownership of the funds in the Master Accounts has been judicially determined as of the date of Debtor's bankruptcy filing to not be vested in the Debtor, other than a partial interest (38.25%) that the Debtor has and continues to receive from the Master as funds are received. To be clear, the funds held by the Master that have been determined to be the Debtor's property have been

and continue to be turned over to the Debtor timely. The other funds held by the Master in the Master Accounts have <u>not</u> been determined to be the Debtor's property, and accordingly, the Motion fails on those grounds alone. The Motion presents this as a simple turnover issue and fails to highlight for this Court and acknowledge the existing property dispute.

3.   Further, the Debtor already agreed to the judicial determination of property rights in the Master Accounts through its duly appointed counsel who expressly consented to entry of the State Court Orders. The Debtor is estopped in this bankruptcy case from disputing a judicial determination of property rights to which it already agreed. By its own actions, the Debtor has waived any right to appeal the State Court's Orders, whether that appeal is to any properly-situated Texas appellate Court, or by an end-run to this Court by way of the Motion.

4.   Finally, the Master Accounts are governed by the State Court Orders. The Master is simply an agent of the State Court and nothing more. Since the Debtor seeks to effectively overturn the State Court Orders, the Motion should give proper notice to the State Court and all parties to the State Court Litigation, with an opportunity for those parties to respond and be heard. The Debtor cannot undermine the State Court Orders and the State Court's authority on these issues by simply seeking an order of this Court that contradicts the express language of the State Court Orders. If the Motion were granted, the Master would be placed in the unfair and unenviable position of having to determine which Court's orders he wishes to be in contempt of.

## RELEVANT BACKGROUND

### A. Background Facts Alleged in the Motion

5.   The facts relevant to this Motion are not in significant dispute. Those facts alleged in the Motion paragraphs 4 through 25 are generally correct and agreed to. One major exception however is the amount in the Master Accounts. As of October 10, 2019, there is

$723,585.42 in the CRMBA Compensatory Royalty Pool Fund (the "Royalty Account") as compared to $500,000 stated in paragraph 16 of the Motion, and $61,960.63 in the CRMBA Disputed Funds Account (the "Disputed Account"), as compared to $275,000 stated in paragraph 18 of the Motion.

6. The facts alleged in paragraph 26 of the Motion regarding the Master's alleged retention of funds due the Debtor are incorrect, though largely irrelevant. The Master has timely transferred all funds due the Debtor to the Debtor and Debtor's related entity, Ponderosa Tx. Operating, LLC ("POp"). The only delay in payments to the Debtor or POp have been the result of POp consistently missing its State Court ordered deadline of the 20th of each month for providing expense documentation to the Master. The only other delay was caused by a property tax matter that required a State Court hearing to resolve.

**B. Background Facts in this Response**

7. The State Court Litigation is primarily a dispute between the Debtor and multiple other parties as to the validity of the Amended State Lease and, therefore, the ownership of the mineral rights of the property covered by the Amended State Lease. The determinative factor in this Motion is that the State Court Judge has determined, as of October 6, 2017, and continuously since that date, "that the ownership of the proceeds from the sale of oil, gas, condensate and other liquid hydrocarbons previously produced, and to be produced, by the Defendant Ponderosa Tx. Operating, LLC from the agreed riverbed of the Canadian River, as defined in the Canadian River Mineral Boundary Agreement, effective January 1, 2002 is disputed, and said disputed funds are and will be in danger of being lost or depleted during the pendency of the captioned litigation" (emphasis added). A copy of this Order, and the two relevant subsequent Orders

(collectively defined above as the "State Court Orders), are attached hereto as **Exhibit A** and incorporated herein for all purposes.

8. The Debtor admits, in multiple pleadings with this Court, and in paragraph 14 of its Motion, that the <u>ownership</u> of these proceeds has been found to be <u>disputed</u> by a state court with proper jurisdiction to make such a finding.

9. The funds in the Master Accounts are the proceeds from the sale of oil to Valero Marketing and Supply Company and the sale of gas to DCP Operating Company L.P. These funds are paid into the Disputed Account, and then 38.25% is transferred by the Master to the Debtor, 21.50% is transferred to the Royalty Account, 3.50% is paid as royalties to the Texas General Land Office and 36.75% remains in the Disputed Account. The Royalty Account generally makes no disbursements. The Disputed Account is used to reimburse POp for 49% of its lease operating expenses (including property taxes) and all of the Master's expenses.

10. Since September 2017, POp has provided the Master with documentation of its monthly expenses, and the Master has reimbursed 49% of such expenses, pursuant to the State Court Orders. Contrary to the Debtor's allegations, the Master has not disputed or delayed any third-party lease operating expenses or reimbursements requested by POp. In fact, the Master has reimbursed POp $342,620.74 of third-party expenses in the past two years. The only reductions the Master has made to POp's requests for reimbursement have been for non-operating items excluded by the State Court Orders, and for undocumented administrative expenses such as the costs associated with management and pumping. Even then, these undocumented administrative expense reimbursements were only recently reduced by the Master when the Debtor and/or POp voluntarily quit operating two of the three leases. Pursuant to the Master's consultant, this reduced workload by POp would substantially reduce its overhead

5

costs. Again, all documented, third party expenses have been timely reimbursed to POp by the Master during the approximate two years of this process.

11. After receiving the Debtor's Motion and the Debtor's counsel's letter regarding turnover of the Master Accounts, the Master has continued to pay the Debtor for the 38.25% of gross proceeds received monthly. The Master agrees that this amount, which has been paid to the Debtor and therefore is not in the Master Accounts or currently under the Master's control, is property of the Debtor's estate, as defined by the State Court Orders.

12. The October 6, 2017, State Court Order specifically instructs the parties, and the Master, that "no funds may be removed from Account No. 1 (and No. 2) without the prior written order of this Court".

13. The March 18, 2018, the State Court Order rescinded all POp's authority with respect to the Master Accounts and left the Master with "the sole control of said accounts and the sole authority to draw checks upon said accounts".

**RESPONSE**

A. **The Master Accounts Are Not Property of the Estate**

14. The Master Accounts are not property of the Debtor's bankruptcy estate. Property of the estate is determined by state law. A Texas Court with proper jurisdiction over the underlying mineral property and the production of such mineral property has determined the ownership of such property to be disputed. The Debtor's state law property rights under the State Court Orders is 38.25% of the mineral production proceeds, which funds remain subject to claw back in the event the Texas Court determines the Debtor had no interest in the disputed property. The Debtor has and continues to timely receive exactly those funds. The Debtor is

entitled to nothing more than the State Court Orders have determined it is entitled to – certainly not the 100% of the mineral proceeds the Debtor asserts is its property in the Motion.

15.    In order for this Court to disregard the property ownership of the funds in the Master Accounts as determined by the State Court Orders, it would have to conduct an evidentiary hearing or trial and determine that the State Court improperly determined, under Texas law, the ownership of the proceeds, mineral property and the Amended State Lease. That could only occur after this Court determined that it has the proper authority to do so, that the Debtor has properly sought that relief and couched those issues in its pleadings (which it did not do in the Motion), and all parties in interest have been properly joined and provided notice. The Master has no financial interest in such a determination, just as he has no financial interest in the State Court Litigation. However, the landowners (Jaten and Riporia) the top lease holder (Signal Drilling, LLC), the State of Texas as the lessor, and Molari Energy, Inc. as a co-working interest owner, all are necessary parties in interest to such a determination. Again, this would be property ownership and lease validity litigation, all governed by Texas law and not a simple turnover issue as the Debtor argues. The Debtor admits to same, despite its curious demand for a "claim estimation" of the parties' rights, as if debtor/creditor legal rights are synonymous with property ownership legal rights.

16.    Beyond the fact that the Debtor has no ownership rights to the funds in the Master Accounts, it has no other rights to them either. The Debtor never was an authorized signer or had access to the accounts. The Debtor's related entity, POp, was stripped of these rights in the March 18, 2018 State Court Order. In short, the Debtor has no legal or equitable interest in the Master Accounts. The Debtor's Motion is nothing more than an attempted overreach on funds

7

and improper end run around the State Court which is directly contrary to the agreed upon State Court Orders that determined the property ownership of such funds.

17. Beyond the legal argument above, the Debtor's Motion highlights exactly why the State Court Orders were entered. The primary dispute in the State Court Litigation is the validity of the Amended State Lease. If such lease is determined invalid, then the Debtor and POp have been converting the other parties' property for several years. The State Court's stated purpose of the Master Accounts is to prevent the disputed funds from being lost or depleted during the State Court Litigation. The Debtor is asking this Court to allow the Debtor to directly violate that purpose and the underlying property determination. The Debtor is requesting to have access to 100% of the production proceeds, not the 38.25% allowed by the State Court Orders which the Debtor already received. The Debtor's use of such funds will deprive all the other parties of any recovery if the Amended State Lease is found invalid as clearly the Debtor is not a solvent entity.

**B. The Relief Sought in the Motion is Barred by Estoppel and Waiver**

18. The State Court Orders determined the ownership of the Master Accounts. Moreover, these orders were approved by Debtor's and POp's Texas counsel, Leon Mitchell. The Debtor cannot agree to a determination of its property rights in one court, while arguing the opposite in this Bankruptcy Court. These are the basis tenants of estoppel. Arguing contrary positions, particularly a position that has been reduced to a court order, is strictly forbidden.

19. Likewise, the Debtor cannot now appeal, either to a Texas Appellate Court or to this bankruptcy Court, an order to which it has agreed to. Any argument that the State Court Orders were improvidently granted was waived by Debtor's counsel's agreement to same.

### C. The Debtor Failed to Notify Proper Parties

20. The Master Accounts were established by the State Court. The operations of the Master Accounts are determined in the State Court Orders. Essentially these funds are held in the Court registry for the 84th District Court of Hutchinson County, Texas. The Master was appointed by the State Court Judge to be his agent in carrying out the terms of the State Court Orders. The State Court Orders specifically state that no funds can be removed from the Master Accounts without a written order of the State Court.

21. Despite the Debtor clearly understanding the above, the Debtor has failed to serve the 84th District Judge with this Motion. The State Court Judge is the principal over the Master Accounts – the Master is merely his agent. Essentially the Debtor is putting the Master in the position of either violating the State Court Orders by turning over the funds in the Master Accounts, or violating the automatic stay of this Bankruptcy Court (which Debtor improperly argues the Master is doing in paragraph 25 of the Motion). Since the Debtor's Motion attempts to overturn the State Court Orders, the Debtor should be required to notice the 84th District Judge of this Motion and to allow that Court the opportunity to reply to such Motion.

### D. The Bankruptcy Case and Motion Were Filed for an Improper Purpose

22. This Motion is clouded by numerous other motions and actions by the Debtor in this case that appear to lack good faith. Clearly the Debtor, and all the parties, would like to move on in their State Court Litigation. The appeal by the State of Texas has prevented that. No party to the litigation is pleased with the delay. That said, bankruptcy courts are not a surrogate court of appeals when litigants do not like the way state court litigation is progressing.

23. In this case, the Debtor's adversary, claim estimation motion, turnover motion, cash collateral motion and essentially the entire case has one purpose – avoid a trial on the merits

of Debtor's disputed lease in the current venue in which such litigation exists. Further, all of these motions and actions of the Debtor ignore the State of Texas' rights in the dispute, including the state's sovereign immunity rights now on appeal. Further, these actions ignore this Court's limits under <u>Stern</u> and its progeny to determine matters properly before state courts. See <u>Stern v. Marshall</u>, 564 U.S. 462, 131 S.Ct. 2594, 180 L.Ed. 2d 475 (2011). In sum, the lease validity issue should be resolved in the state court it presently resides. The ownership of any mineral, production and proceeds will flow from that resolution. This bankruptcy case is Debtor's attempt to upend that process.

*[Signature on next page]*

**WHEREFORE,** the Master respectfully requests that the Motion be denied and that the Debtor and other parties rights under the State Court Orders continue as they were pre-petition until the State Court Litigation is concluded, together with such other and further relief as this Court deems just and proper.

Dated:  New York, New York
October 23, 2019

**LAW OFFICES OF KENT RIES**

By: */s/ Kent Ries*
Kent Ries
2700 S. Western St., Suite 300
Amarillo, Texas 79109
Telephone: (806) 242-7437
Fax: (806) 242-7440
Email: kent@kentries.com

-and-

**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**
Fred Stevens
Christopher Reilly
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Email: fstevens@klestadt.com
creilly@klestadt.com

*Attorneys for the Court Appointed Special Master*