**GREENBERG TRAURIG, LLP**
Alan J. Brody, Esq.
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
(973) 443-3543 (Telephone)
(973) 295-1333(Facsimile)

-and-

Ryan A. Wagner, Esq.
MetLife Building
200 Park Avenue
New York, New York 10166
(212) 801-3191 (Telephone)
(212) 801-6400 (Facsimile

*Counsel to Jaten Oil Company and Riparia, LC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| PONDEROSA–STATE ENERGY, LLC, | Case No. 19–13011 (JLG) |
| Debtor. | |

**REPLY MEMORANDUM OF LAW OF JATEN OIL COMPANY AND RIPARIA, LC IN SUPPORT OF MOTION PURSUANT TO 11 U.S.C. § 362(D)(1) MODIFYING THE <u>AUTOMATIC STAY TO PROCEED WITH PENDING STATE COURT ACTION</u>**

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** .................................................................................................... 1

**ARGUMENT** ................................................................................................................................. 2

    A.      Application of the Sonnax Factors Supports Stay Relief ....................................... 2

          1.      Factor 1: Whether Relief Would Result in a Partial or Complete Resolution of the Issues ................................................................................................... 2

          2.      Factor 2: Lack of Any Connection with or Interference with The Bankruptcy Case; And Factor 4: Whether A Specialized Tribunal with The Necessary Expertise Has Been Established to Hear the Cause of Action ............................... 4

          3.      Factor 6: Whether the Action Primarily Involves Third Parties ........................... 5

          4.      Factor 10: The Interests of Judicial Economy and The Expeditious and Economical Resolution of Litigation .................................................................... 7

          5.      Factor 12: Impact of The Stay on The Parties and The Balance of Harms ........... 8

**CONCLUSION** ............................................................................................................................. 9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Celotex Corp. v. Edwards*,
   514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) ................................................................6

*In re Guild & Gallery Plus, Inc.*,
   72 F.3d 1171 (3d Cir. 1996) ..........................................................................................................7

*In re Mildred Deli Grocery, Inc.*,
   Case No. 18-10077 (MG), (Bankr. S.D.N.Y. Feb. 28, 2018) ............................................2, 3, 5

*In re Sonnax Industries, Inc.*,
   907 F.2d 1280 (2d Cir. 1990), (1) ..............................................................................................1, 2

*State of Texas et al. v. Signal Drilling, LLC et al.*,
   No. 07-17-00412-CV (Tex. App. Oct. 30, 2019) .....................................................................2, 5

*In re Sterling*,
   Case No. 14-12608-shl (Bankr. S.D.N.Y. Jan. 5, 2018) ...............................................................5

*TMT Procurement Corp. v. Vantage Drilling Co.*,
   764 F.3d 512 (5th Cir. 2014) .....................................................................................................6, 7

**Statutes**

11 U.S.C.§§ 105 and 543 ....................................................................................................................2

11 U.S.C. §§ 361 and 363(c) ..............................................................................................................2

11 U.S.C. § 362(d)(1) .........................................................................................................................1

28 U.S.C. § 1334(c)(1) .......................................................................................................................4

11 U.S.C.§§ 105 and 541 ................................................................................................................1, 4

11 U.S.C.§§ 541 .................................................................................................................................4

Fed. R. Bankr. P. 7019 ................................................................................................................3, 6, 8

Federal R. Civ. P. 19 ..................................................................................................................3, 6, 8

Tex. R. Civ. Pro. 39 ............................................................................................................................3

Jaten Oil Company and Riparia, LC (collectively, the "Texas Plaintiffs"), by and through their undersigned counsel, respectfully submit this Reply Memorandum of Law in support of their *Motion for an Order Pursuant to 11 U.S.C. § 362(d)(1) Modifying the Automatic Stay to Proceed with Pending State Court Action* (the "Motion")[1] (Docket No. 87)[2] seeking entry of an Order pursuant to 11 U.S.C. § 362(d)(1) modifying the automatic stay to permit the parties to complete a pending state court action styled *Signal Drilling, et al. v. New-Tex Operating, et al.*, cause no. 41,971, pending in the 84th Judicial District Court of Hutchinson, Texas (the "Texas Litigation") against 21 defendants, including the above-captioned debtor, Ponderosa–State Energy, LLC (the "Debtor").[3] The Debtor has submitted an opposition (the "Opposition") (Docket No. 125). In support of the Motion and in reply to the Opposition, the Texas Plaintiffs respectfully represent as follows:

**PRELIMINARY STATEMENT**

After 4.5 years of litigation in Texas state court, the Debtor has filed the present chapter 11 proceeding to stay the Texas Litigation and an adversary complaint therewith that raises the exact same claims as those pending decision in the Texas Litigation. The Debtor's assertion that its claim for injunctive relief pursuant to Bankruptcy Code sections 105 and 541—a blatant attempt to manufacture federal jurisdiction—prevails over the Texas state law claims is nonsensical. As is discussed below, the *Sonnax* factors support granting the Motion and allowing the issues of pure Texas law, between the entirely Texas-based parties and property, to be resolved where they are

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[2] "Docket" refers to the docket in this Proceeding, 19-13011-JLG, unless otherwise indicated.

[3] The Texas Litigation involves 21 parties including the State of Texas, formally styled: *[1] Signal Drilling, LLC, [2] Jaten Oil Company, [3] Riparia, LC v. [4] New-Tex Operating, [5] New-Tex Petroleum II. LP, [6] NTP General II, LLC, [7] New-Tex Operating II, LLC, [8] Haymaker Oil and Gas, LLC, [9] Beau Kelley, [10] Joseph Kelley, [11] Sandra Brown, [12] Paul Hayner, [13] Michael Cannon, [14] Green Bank, N.A., [15] DND Oil, Inc., [16] Ponderosa Operating, LLC, [17] Ponderosa Energy, LLC, [18] Ponderosa-State Energy, LLC, [19] Texas General Land Office, [20] George P. Bush, in his official capacity as Texas Land Commissioner, and [21] the State of Texas.*

already well under way in the Texas courts.

# ARGUMENT

### A.      Application of the *Sonnax* Factors Supports Stay Relief

Cause exists in this case to modify the stay and allow the Texas Litigation to proceed in the Texas court. The arguments set forth in the Motion are incorporated and reiterated herein. The Second Circuit's test in *In re Sonnax Industries, Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990)[4] favors granting stay, for the reasons that follow.

#### 1.      Factor 1: Whether Relief Would Result in a Partial or Complete Resolution of the Issues

The Debtor argues exercising jurisdiction over the Adversary Proceeding would "not be duplicative" of the Texas Litigation.[5] The Debtor completely misses the relevant issue—whether lifting the stay would result in complete resolution of the issues. Here, it would. *See In re Mildred*

---

[4]     (1) whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case;
(3) whether the other proceeding involves the debtor as a fiduciary;
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
(5) whether the debtor's insurer has assumed full responsibility for defending it;
(6) whether the action primarily involves third parties;
(7) whether litigation in another forum would prejudice the interests of other creditors;
(8) whether the judgment claim arising from the other action is subject to equitable subordination;
(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
(10) the interests of judicial economy and the expeditious and economical resolution of litigation;
(11) whether the parties are ready for trial in the other proceeding; and
(12) impact of the stay on the parties and the balance of harms.

*In re Sonnax Industries, Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990)

[5]  In addition to the four substantive orders entered by the Texas state court from April 5, 2017 through March 28, 2018, the Texas Court of Appeals' opinion demonstrates that the Texas courts have been intimately involved in the factual and legal disputes concerning the Texas property and oil and gas rights and that the Texas Litigation has proceeded quite far towards reaching a ruling on the merits. *See State of Texas et al. v. Signal Drilling, LLC et al.*, No. 07-17-00412-CV (Tex. App. Oct. 30, 2019), (the "Texas Appellate Opinion"), attached to the *Certification of Alan J. Brody in Support of Objection to Jaten Oil Company and Riparia, LC to (1) Motion for Order Motion Pursuant to 11 U.S.C.§§ 105 and 543 for Entry of an Order (I) Requiring Special Master to Turnover Property; and (II) Establishing Deadlines for Special Master's (A) Accounting and (B) Request for Compensation; (2) Motion Pursuant to 11 U .S.C. §§ 105(a), 345(b), and 363(c) for (I) Entry of an Interim Order Authorizing Debtor to Use Existing Cash Management System, and (II) Entry of a Final Order Authorizing Debtor to use Modified Cash Management System; and (3) Motion Pursuant to 11 U.S.C. §§ 361 and 363(c) for Order Authorizing Use of Cash Collateral.* (Bk. Docket, 19-13011-JLG, No. 72).

2

*Deli Grocery, Inc.*, Case No. 18-10077 (MG), at *8 (Bankr. S.D.N.Y. Feb. 28, 2018) (granting stay relief, reasoning that "[r]elief from the stay would result in the District Court determining whether the Debtor is liable and the amount of the claim would be liquidated, thus resolving the Movants' FLSA claims completely."). Rather than argue *whether* the Texas Litigation would resolve the issues, the Debtor erroneously argues *when* the issues would be resolved, implying that it is not soon enough and that the Adversary Proceeding would somehow be quicker. "[T]he Debtor determined that it requires this Court's intervention *to quickly resolve the legal issues . . . .*" (Opposition at ¶ 25 (emphasis added)). Even if this was the legal standard, which it is not, this bare self-serving assertion is unsupported by the facts.

The adversary complaint does not present a simple issue of contract construction that can be resolved solely between the Texas Plaintiffs and Ponderosa (as the Debtor wants this Court to believe). As the Debtor itself stated in a Texas Litigation court filing in its *Motion for Partial Summary Judgment & Response to Plaintiff's Motion for Partial Summary Judgment* ("Debtor's MPS") (attached hereto as Exhibit A), "The State of Texas is an Indispensable Party. . . . All minerals owners are an indispensable party . . . ." Debtor's MPS at pp. 5–6. Continuing, the Debtor argues "[b]ecause the holding in this case would affect the determination of a royalty interest or the validity of lease [*sic*], then Rule 39 requires the joinder of all parties who have an interest in the minerals." *Id*. at p. 6. The Debtor seeks a decision that will affect the determination of a royalty interest (and necessarily depend on a determination of the validity of the CRMBA). Texas Rule of Civil Procedure 39 is a carbon copy of Fed. R. Civ. P. 19, made applicable hereto under Fed. R. Bankr P. 7019. Thus, the State of Texas and other Texas litigants, by the Debtor's own admission, are necessary parties.

The Debtor may claim that this case is narrower than the Texas Litigation, which it is not, but even then, the Debtor's Amended Complaint (Adv. Docket, 19-1359-JLG, No. 19) ("Amended

3

Complaint") asks for injunctive, declaratory, and legal relief seeking a determination of royalty rights and the validity of the lease that will undoubtedly prejudice the rights of the Texas Litigation Parties, including the State of Texas (both in its capacity as a sovereign and as a contract party). Moreover, notwithstanding the pressing issue of the Debtor's failure to join the necessary parties to this action, the fact remains that adjudication of the Texas Litigation in a Texas court will result in complete resolution of the issues raised in the Amended Complaint.

    2.    **Factor 2: Lack of Any Connection with or Interference with The Bankruptcy Case; And Factor 4: Whether A Specialized Tribunal with The Necessary Expertise Has Been Established to Hear the Cause of Action**

The Debtor erroneously argues that "[a]lthough the State Court may be most familiar with Texas state law, there is no Texas statutory law implicated in the CRMBA Adversary Proceeding." (Opposition at ¶ 25.) The Debtor relies on his erroneous argument that issues raised by the Debtor relate to property of the estate under section 541 of the Bankruptcy Code (and thus, by implication, that the issues are connected to the bankruptcy case and do not require any expertise of Texas law). (Opposition at ¶ 19.)

The Debtor filed its Amended Complaint on December 10, 2019, or, 15 days after the present Motion was filed in which the Debtor, for the first time, asserts a claim for declaratory, injunctive, and legal relief under sections 105 and 541 of the Bankruptcy Code. The propriety of this claim is discussed at length in the Texas Plaintiffs' *Reply Memorandum of Law of Jaten Oil Company and Riparia, LC in Support of Motion Pursuant to 28 U.S.C. § 1334(c)(1) for Abstention in Favor of Pending Texas Litigation* ("Abstention Reply") filed concurrently herewith, which is incorporated and restated herein for all purposes. The thrust of the Debtor's argument relies on the idea that the sections 105/541 claim predominates over the state law claims. On this point, the Debtors are, plainly, wrong. Deciding whether the disputed mineral assets are property of the estate would turn entirely on Texas law, Texas facts, and ultimately follow the same path as the

4

Texas Litigation, 4.5 years ahead; there is no section 541 statutory text or case law that will help resolve the proper construction of the CRMBA[6] given an understanding of nuanced Texas oil and gas law (e.g. "possession" of subsurface minerals sufficient to constitution adverse possession), real property and riparian rights, and an intimate familiarity with the storied history of the 2002 CRMBA, dating back decades. *See* Texas Appellate Opinion, pp. 3–7; *see also In re Mildred Deli Grocery, Inc.*, Case No. 18-10077 (MG), at *8 (Bankr. S.D.N.Y. Feb. 28, 2018) ("While the District Court is not a specialized tribunal, it is highly experienced in actions brought under the FLSA and New York Labor Law and is familiar with the particular issues involved in the FLSA Litigation."); *In re Sterling*, Case No. 14-12608-shl, at *10 (Bankr. S.D.N.Y. Jan. 5, 2018) (granting stay relief, reasoning that "[t]he state court clearly has the expertise to address the foreclosure issues."). Furthermore, the parties to the CRMBA expressly agreed that the CRMBA "and all of the transactions contemplated [t]herein shall be governed by and construed in accordance with the laws of the State of Texas, and venue for the construction, interpretation or enforcement of this {CRMBA} shall be in Travis County, Texas or Hutchinson County, Texas", the situs of pending Texas State Court Litigation. CRMBA ¶ 15.

### 3. Factor 6: Whether the Action Primarily Involves Third Parties

The Debtor erroneously argues that even if the State of Texas is a necessary party, continuing with the Adversary Proceeding in its absence will not offend sovereign immunity because this court has *in rem* jurisdiction over the disputed mineral assets—"If this Court determines that the State of Texas is a necessary party to the CRMBA, it does not offend sovereign immunity." (Opposition at ¶ 19.) The Debtor's argument confuses the issue—substituting the issue of joinder with the merits of the underlying Texas litigation (the Debtor's Oppositions are

---

[6] Nor may the Debtor assert any rights allegedly provided in the CRMBA, as the Debtor is not, nor has it ever been, a party to the CRMBA.

5

replete with this sort of bait and switch tactic).[7]

Joinder does not turn on the State of Texas' sovereign immunity defense; rather, joinder depends on whether the State of Texas (and the other sixteen Texas litigants) are necessary parties under Fed. R. Civ. P. 19, made applicable hereto by Fed. R. Bankr. P. 7019. Here, complete relief cannot be granted to the parties in the absence of, *inter alia*, the State of Texas, because it has a vested interest in the ownership dispute over the mineral assets; the Debtor admits this itself in its MPS, pp. 5–6. Thus, the State of Texas and, by the Debtor's own briefing, all of the parties with an interest in the outcome of this ownership dispute, would need to be joined under Fed. R. Civ. P. 19.[8]

Moreover, the State of Texas' sovereign immunity is only unaffected by this Court's exercise of *in rem* jurisdiction of property (*rem*) of the estate. But the very relief sought by the Debtor is a determination that certain property is property of the estate, which is by no means a settled matter. Say for the sake of example the Court were to exercise jurisdiction and that it found that the assets were the property of the Texas Plaintiffs—not property of the estate. Would the Court have *in rem* jurisdiction over the disputed assets then? Because a ruling from a court of competent jurisdiction as to the ownership dispute will undoubtedly prejudice the State of Texas, whichever direction that ruling went, it would be imperative that the property was property of the estate *ex ante* the exercise of jurisdiction over the State of Texas' property.[9] This example highlights the fundamental flaw with Debtor's logic—presupposition of a favorable result in the

---

[7] The Debtor also erroneously argues that "[t]he Texas Plaintiffs could sever out the Debtor from any claim that are unrelated to the Debtor." (Opposition at ¶ 31). This argument supports lifting the stay as a predicate (because otherwise it would be nonsensical) and also fails to address problems that would arise with claim and issue preclusion as well as *res judicata*, though, those issues are tied up with joinder and are ultimately beyond the scope of the Motion.

[8] Whether joinder is feasible and these parties are not indispensable goes beyond the scope of the Motion, but would be germane to a motion to dismiss for failure to join necessary, indispensable parties.

[9] It should also be noted that the State of Texas' interest in these issues is both in its status as a sovereign and a contract party.

6

ownership dispute in order to end-run jurisdiction, property of the estate, expediency, etc. The Fifth Circuit called out similar circular logic to shoehorn jurisdiction in *TMT Procurement Corp*, where it stated:

> Finally, Vantage points out that the Debtors cannot rely on the orders as the means by which the Vantage Shares became "property of the estate" because the bankruptcy court and the district court had no authority to issue the orders unless the Vantage Shares were already "property of the estate." The bankruptcy court and the district court could not manufacture *in rem* jurisdiction over the Vantage Shares by issuing orders purporting to vest the Debtors with a post-petition interest in the Vantage Shares.[FN 54] We agree. The Debtors cannot use the orders as "jurisdictional bootstrap[s]" to allow the district court and bankruptcy court to "exercise jurisdiction that would not otherwise exist."
>
> [FN 54] *See Celotex Corp. v. Edwards*, 514 U.S. 300, 327, 115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995) (holding that a bankruptcy court could not use "jurisdictional bootstrap[s]" to "exercise jurisdiction that would not otherwise exist"); *In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1182 (3d Cir. 1996) (holding that a consent order purporting to exert jurisdiction over non-estate property cannot "be utilized to support a finding of subject matter jurisdiction over claims that otherwise could not be heard in bankruptcy court").
>
> For these reasons, we conclude that the Vantage Shares are not property of the Debtors or "property of the estate." Therefore, the district court and the bankruptcy court lacked jurisdiction on this basis.

*TMT Procurement Corp. v. Vantage Drilling Co.*, 764 F.3d 512, 525-26 (5th Cir. 2014) (citing and quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 327, 115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995). Here, disabused of false, circular logic, the Debtor's Opposition rings equally hollow.

    **4.**    **Factor 10: The Interests of Judicial Economy and The Expeditious and Economical Resolution of Litigation**

The Debtor erroneously claims that the fact that the Texas Litigation is temporarily stayed pending appeal means that it will not be resolved more quickly and efficiently than the Adversary Proceeding—"If the stay is lifted . . . the Debtor will either need to expend resources in the State Court *which will inevitably be a longer waiting period*, or expend resources in this Court, in an expedited proceeding to resolve the underlying issues."[10] (Opposition at ¶ 19 (emphasis added)).

The Debtor argues that proceeding in the Texas courts will "inevitably be a longer period."

---

[10] The Debtor admits that the Texas Litigation will resolve these issues, in satisfaction of the first factor.

7

(Opposition at ¶ 19.) This is false. It is entirely possible, even probable, that the Adversary Proceeding will be a long road. As set forth herein and in the Motion, there are numerous procedural, jurisdictional, and legal issues that would need to be resolved before reaching the merits of this Adversary Proceeding. After joinder, appeals, coordinating 21 Texas-based litigants for hearings, etc., it is surely doubtful that this will be as easy as the Debtor portrays. The Debtor has already accrued $190,000 in professional fees by its bankruptcy counsel from the bankruptcy filing through November 30, 2019 (Dkt. 122 at 6), and it is a far stretch to assume that foregoing 4.5 years of preparation and taking these purely state law claims up in an adversary proceeding would be faster or less costly than allowing the Texas Litigation to run its course.

     **5.**     **Factor 12: Impact of The Stay on The Parties and The Balance of Harms**

The Debtor erroneously argues that "[t]he Texas Plaintiffs are the only parties to the State Court Lawsuit who are also parties to the CRMBA Adversary Proceeding." This is untrue; the Texas Plaintiffs are the only parties to the CRMBA that are also parties to the *Adversary Proceeding* (there are multiple CRMBA contract parties in the Texas Litigation). The Texas Plaintiffs also maintain that this is in contravention of Rule 19 of the Federal Rules of Civil Procedure and Rule 7019 of the Fed. R. Bankr. P.s. Moreover, unlike the Texas litigants who the Debtor neglected to join, <u>the Debtor is not a party to the CRMBA</u>, which supports that the balance of harms weighs in favor of lifting the stay to ensure those parties (to the very agreement the Debtor seeks a court to interpret) have their day in court.

The Debtor argues that its commencement of the bankruptcy case and the Adversary Proceeding was not an attempt to get a second bite at litigation, but rather was "out of desperation to litigate the underlying contract dispute and concentrate on what it does best, operate an oil and

8

gas business . . . ." (Opposition at ¶ 19.)[11] Perhaps out of the same desperation, the Debtor turns a blind eye towards the substantial resources that it has already spent, and will have to continue to spend in order to get through the panoply of procedural issues that would need to be resolved, before the merits (depending entirely on Texas law) could be addressed in this Court.

In wanting to address the merits of this case as quickly and cost-effectively as possible, the Texas Plaintiffs' and the Debtor's interests are aligned. It is whether this bankruptcy proceeding is the most expeditious and appropriate forum to do the same that their opinions diverge. For the foregoing reasons, the Texas Plaintiffs respectfully request that this Court grant the Motion and allow them to proceed with the Texas Litigation and litigate their claims to conclusion outside of the bankruptcy court.

## CONCLUSION

For the reasons set forth herein, the Court should grant relief from the stay to allow the parties to continue to litigate the Texas Litigation through conclusion. Stay relief will allow the very issues raised in the Adversary Proceeding to be timely resolved in the Texas courts.

Dated: January 3, 2020  
Florham Park, New Jersey

**GREENBERG TRAURIG, LLP**

By: */s/ Alan J. Brody*  
Alan J. Brody, Esq.  
500 Campus Drive  
Florham Park, New Jersey 07932  
Telephone: (973) 443-3543  
Email: brodya@gtlaw.com

Ryan A. Wagner, Esq.  
MetLife Building  
200 Park Avenue  
New York, New York 10166  
Telephone: (212) 801-3191  
Email: wagnerr@gtlaw.com

*Counsel for Jaten Oil Company and Riparia, LC*

---

[11] The Debtor continues to confuse the fact that non-debtor Ponderosa TX Operating, LLC, not the Debtor, operates the oil and gas wells on the Texas property.

9